THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATRINA DEMOREST,

          Plaintiff,

  v.

JANET NAPOLITANO, et al.,

          Defendants.

NO. 09-1310RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Plaintiff's motion for partial summary judgment (Dkt. # 9), and Defendants' motion for summary judgment (Dkt. # 11). Though the Plaintiff requested oral argument, the court finds the motions suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court DENIES the Plaintiff's motion (Dkt. # 9) and GRANTS the Defendants' motion (Dkt. # 11).

## II. BACKGROUND

Plaintiff Katrina Demorest was hired by the U.S. Customs Service[1] in 1993. In 2007, when Ms. Demorest was employed as a customs and border protection officer ("CBPO") in Blaine, she requested a temporary adjustment to her work schedule to accommodate her anxiety and bipolar disorders. The job duties of a CBPO include inspecting people entering and exiting the United States, and the job description requires that a CBPO work "on a shift and rotational basis and perform substantial amounts of overtime," and must carry a firearm and maintain proficiency to do so. Cohen Decl. (Dkt. # 12), Ex. A.

In June 2007, Ms. Demorest submitted documentation from her health care providers stating that her "mental and physical health is worsened by rotating shifts," and that it would be best for her health to work only daytime shifts. Cohen Decl., Ex. B. In July 2007, Ms. Demorest submitted a formal written request for accommodation, and the request was eventually amended to request, in the alternative, a transfer to daytime shifts at the Bellingham port of entry. *See* Cohen Decl., Ex. E.

CBP responded to Ms. Demorest's accommodation request in September 2007. Cohen Decl., Ex. E. CBP determined that because Ms. Demorest's condition required her to work daytime shifts — she was not a "qualified individual with a disability" because she could not perform one of the essential functions of her job (working rotating shifts and overtime). *Id*. CBP's response also stated that Ms. Demorest had failed to "substantiate[] that you have a physical or mental impairment that substantially limits a major life activity." *Id*.

---

[1] In March 2003, the U.S. Customs Service was moved to the Department of Homeland Security and became part of the Defendant U.S. Customs and Border Protection division ("CBP").

ORDER - 2

In December 2007, CBP rescinded Ms. Demorest's authority to carry a government-issued firearm, pending an examination of her fitness to do so.  Cohen Decl., Ex. H.  At the same time, CBP also informed Ms. Demorest that it was granting her request for accommodation:  she was being placed on light-duty status, working daytime shifts in the vehicle export office, pending her fitness-for-duty examination. *Id.*  00Ms. Demorest remained on light-duty status working daytime shifts until May 2008.  Cohen Decl., Ex. I.

On May 21, 2008, CBP told Ms. Demorest that, based on the results of her firearm examination, she was capable of returning to her previous position in Blaine. *Id.*  Two days later, CBP informed Ms. Demorest that once she returned to Blaine, she would have to follow the standard shift rotation requirements.  Cohen Decl., Ex. J.

On June 10, 2008, based on the 877 hours of unpaid absence that Ms. Demorest had accumulated since the first pay period in 2007, CBP notified Ms. Demorest that she faced termination if she did not become available for duty on a regular and full-time basis.  Cohen Decl., Ex. K.  About two weeks later, CBP restated that excessive absences could result in termination, but that CBP would continue to approve leave requests if Ms. Demorest was unable to perform her duties due to her medical condition.  Cohen Decl., Ex. L.

In September 2008, after Ms. Demorest became unable to perform her regular duties and provided a new report from her physician to CBP, CBP offered to allow Ms. Demorest to work light-duty day shifts with no overtime.  *See* Cohen Decl., Ex. M.  She accepted that position and worked that schedule until the end of 2008.

On October 1, 2008, Allison Suliveras, CBP's assistant director of Field Operations, proposed that Ms. Demorest be removed from her CBPO position due to excessive absence. Her proposal describes her concerns with Ms. Demorest's attendance:

> During the period from August 19, 2007 through August 30, 2008, you did not report for work as scheduled on numerous occasions. In particular, during this time period, you were charged with <u>326.25</u> hours of absence without leave (AWOL). In addition, you were granted <u>733.25</u> hours of leave without pay (LWOP). During this time period there were <u>2160</u> regularly scheduled work hours (non-overtime). A review of your hours worked during this time period reveals that you were absent from work, wither as AWOL or LWOP, <u>1059.50</u> of those hours, or <u>forty-nine (49) percent</u> of your 2160 regularly scheduled work hours.

Cohen Decl., Ex. N (underlining in original). Ms. Demorest both responded to Ms. Suliveras's proposal both orally and in writing. Cohen Decl., Ex. Q. But on December 28, 2008, CBP's director of Field Operations issued a letter advising Ms. Demorest that she would sustain Ms. Suliveras's proposal because she found that Ms. Demorest's absences had "continued beyond a reasonable time for reasons that were beyond [her] control" and were "likely to continue indefinitely," and that, even in the 46 weeks when Ms. Demorest was allowed to work a daytime shift, she was "still absent from work for much of this time." *Id*. The letter terminated Ms. Demorest's employment effective upon her receipt of the letter (December 30, 2008). *Id.*

In early December 2008, Ms. Demorest requested a transfer to a different location (performing the same job) or a reassignment to any of a number of other positions. *See* Cohen Decl, Ex. P. CBP's Equal Employment Opportunity ("EEO") officer asked Ms. Demorest to provide additional documentation on her medical

ORDER - 4

condition, and Ms. Demorest did not respond to either letter. *See* Cohen Decl., Ex. R. After CBP learned that Ms. Demorest's employment had been terminated on December 30, 2008, CBP's EEO officer informed Ms. Demorest that her case had been closed out. *Id*.

In March 2009, Ms. Demorest's application for disability retirement benefits was approved by the United States Office of Personnel Management. *See* Cohen Decl., Ex. Z.

Ms. Demorest filed two appeals with the Merit Systems Protection Board ("MSPB"). Her first appeal was filed before her termination, and alleged that her status as on leave without pay constituted a constructive suspension. This appeal was dismissed for lack of jurisdiction, and the MSPB's dismissal states that the "evidence shows that the agency wanted [Ms. Demorest] at work, and she voluntarily chose not to come to work." Cohen Decl., Ex. W at 19.

Ms. Demorest filed a second MSPB appeal to challenge her termination. In July 2009, the MSPB affirmed the termination and denied Ms. Demorest's affirmative defenses to the charge of excessive absences. The MSPB decision states that Ms. Demorest "has not shown that she could perform the essential duties of her current position, or a vacant position to which she could be reassigned, with or without accommodation, and therefore, I find she has not shown she is a qualified individual with a disability." Cohen Decl., Ex. X at 12. Ms. Demorest did not file a petition for review of the decision on her second appeal.

Ms. Demorest also filed three EEO complaints during 2007-08. The parties have apparently resolved the second and third complaints (see Def.'s Opp'n (Dkt. #

ORDER - 5

11) at 11 n.2). The first complaint was filed on October 9, 2007, and defined the issue presented to be, in relevant part:

> Whether [CBP] discriminated against [Ms. Demorest] . . . based on her physical and mental disabilities (migraine headaches, insomnia, depression, anxiety attacks) and retaliation (prior EEO activity) when: (1) On September 4, 2007, her request for reasonable accommodation, i.e., to work a straight day shift with no overtime, was denied, and, thus, she has been scheduled to work rotating shifts, nights, midnights, and overtime since approximately June 2007.

Cohen Decl., Ex. S.

This complaint was ultimately dismissed under a *res judicata* theory, because the "MSPB's adjudication [of the second MSPB appeal] of the underlying facts and accepted issues in the present complaint effectively bars [Ms. Demorest] from re-litigating her case with the EEOC." Cohen Decl., Ex. Y. That dismissal became the final agency action on September 24, 2009. *Id.*

On September 15, 2009, Ms. Demorest filed this action against Janet Napolitano in her official capacity as secretary of the Department of Homeland Security and the CBP, alleging four causes of action: (1) disability discrimination (disparate treatment) based on CBP's denial of her reassignment requests and her termination; (2) disability discrimination (failure to accommodate) based on CBP's denial of her reassignment requests; (3) failure to engage in an interactive process with respect to her accommodation requests; and (4) reprisal. Ms. Demorest's Complaint identifies two positions to which she was not reassigned: entry specialist and import specialist. *See* Complaint ¶¶ 19-22, 34.

ORDER - 6

Ms. Demorest filed a motion for partial summary judgment, asking the court to find the Defendants liable on all four claims, leaving only the issue of damages for trial. The Defendants cross-moved for summary judgment against all claims.

### III.   ANALYSIS

**A.   Standard of Review.**

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment against a claim is appropriate if there is "a complete failure of proof concerning an essential element of the nonmoving party's case," because that "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

**B.   The Defendants are Entitled to Summary Judgment Against Plaintiff's Disability Discrimination Claims Because Plaintiff has Not Established that She Could Perform the Essential Functions of Either Her Job or Her Proposed Alternative Jobs, With or Without Accommodation.**

The Ninth Circuit has held that the Rehabilitation Act of 1973 provides the exclusive remedy for federal employees claiming discrimination based on disability. *See Johnston v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989), *overruled on other grounds*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990). Because all of Ms.

Demorest's claims are related to her alleged disability, her claims are governed by the Rehabilitation Act.[2]

The Rehabilitation Act prohibits covered entities from discriminating on the basis of disability against a person with a disability who is able to perform the essential functions of her current or desired job, with or without reasonable accommodation. *Hutton v. Elf Atochem North America, Inc.*, 273 F.3d 884, 892 (9th Cir. 2001). A prima facie case of disparate treatment under the Rehabilitation Act has three elements: the plaintiff must show that (1) she is a person with a disability, (2) she is otherwise qualified for employment, and (3) she was discriminated against based on her disability. *See Walton v. U.S. Marshals Service*, 492 F.3d 998, 1005 (9th Cir. 2007). "Otherwise qualified for employment" means that the person "can perform 'the essential functions' of the job in question." *School Bd. of Nassau County, Fla. v. Arline*, 480 U.S. 273, 288 n.17 (1987) (citing 45 C.F.R. § 84.3(k)).

A prima facie case of failure to accommodate under the Rehabilitation Act also has three elements: the plaintiff must show that (1) she is a person with a disability, (2) she, with or without accommodation, can perform the essential functions of her job, and (3) if accommodation is required under (2), then the plaintiff must show that a reasonable accommodation is possible. *See Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993).

---

[2] Though Ms. Demorest's Complaint asserts claims under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act governs here. This distinction does not affect the court's inquiry regarding liability, however, because the Rehabilitation Act is governed by the same liability standards as the ADA. *See Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004).

The court also notes that recent amendments to the ADA are not relevant here, because the actions complained of in this lawsuit occurred before the effective date of the amendments (January 1, 2009) and the amendments do not apply retroactively. *See Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562, 565 ("The ADA Amendments Act of 2008, which became effective on January 1, 2009, does not apply retroactively to govern conduct occurring before the Act became effective."). Thus, the court will apply the pre-Amendments definitions and law in this Order.

ORDER - 8

A disparate treatment claim and a failure to accommodate claim both require the plaintiff to show that she can perform the essential functions of the job, and the Defendants contend that Ms. Demorest has not made, among other things, this showing.[3] The court now turns to consider whether Ms. Demorest has met her burden on that element.

Ms. Demorest's briefing is not entirely clear as to what she asserts are the essential functions of either her CBPO position, or the Entry Specialist or Import Specialist positions to which she requested to be transferred. Ms. Demorest maintains that "round-the-clock vigilance in life-or-death circumstances" — a function she apparently agrees she cannot perform (see Pltf.'s Reply (Dkt. # 15) at 3) — is an essential function of only the CBPO position, but not the alternative positions. *See* Pltf.'s Reply at 3. Thus, Ms. Demorest contends that because her proposed alternatives do not require "round-the-clock vigilance in life-or-death circumstances," she should have been transferred to one of those positions as an accommodation to her disability instead of being terminated.

Ms. Demorest also states that regular attendance was not an essential function during the 2007 disability period. *See* Pltf.'s Reply at 11. Assuming Ms. Demorest intends this argument to apply to her proposed alternative positions, the court does not agree because (1) Ms. Demorest cites no authority for this proposition, and (2) this argument squarely contradicts evidence submitted by the Defendants. *See*, *e.g.*, Wise Decl. (Dkt. # 14) ¶¶ 8-9 (explaining why regular attendance is an essential function of the Entry/Import Specialist positions).

---

[3] Though the Defendants contend that Ms. Demorest has also failed to make other required showings, the court first addresses this showing. Because, as this order will explain, the court finds that Ms. Demorest has failed to show that she can perform the essential functions of either her CBPO position or her desired alternative positions, the court need not go on to analyze any of the Defendants' alternative arguments.

ORDER - 9

Ms. Demorest's Reply Brief does not address — let alone rebut — the Defendants' evidence that regular attendance is an essential function of the Entry/Import Specialist positions to which Ms. Demorest contends she should have been transferred.[4] Instead, Ms. Demorest argues that her claims focus on 2007, rather than her absences in 2008, because her disability-related absences necessitate a trial, which is why she did not move for summary judgment on her "2008 disability-related attendance period." Pltf.'s Reply at 2. But Ms. Demorest cannot simply choose to ignore the months leading up to her termination, particularly in light of the Defendants' motion for summary judgment based on the facts of Ms. Demorest's entire employment history. Because Ms. Demorest has failed to establish that she could perform the essential functions of either her CBPO position or her desired alternatives even with accommodation, and instead submits only conclusory statements in her briefing, the court finds that her failure to present evidence as to an essential element of her claims for disability discrimination entitles the Defendants to summary judgment against these claims.

### C.     The Defendants are Entitled to Summary Judgment Against Plaintiff's Claim Alleging a Failure to Engage in an Interactive Process.

Ms. Demorest's complaint asserts a claim based on CBP's failure to engage in an interactive process to determine if her requests for accommodation could be granted. The Ninth Circuit, however, has held that there is no independent obligation

---

[4] Ms. Demorest's approved application for disability retirement benefits further underscores that she was unable to perform the functions of her desired alternative positions, because otherwise she would not be entitled to receive disability retirement benefits. *See* 5 U.S.C. § 8337(a) ("Any employee shall be considered to be disabled only if the employee is found . . . to be unable, because of disease or injury, to render useful and efficient service in the employee's position and is not qualified for reassignment . . . to a vacant position which is in the agency at the same grade or level and in which the employee would be able to render useful and efficient service."). Ms. Demorest's application is not in the court record, however, and thus the court cannot consider any assertions she made therein for purposes of ruling on this motion.

ORDER - 10

on employers to engage in an interactive process regarding an employee's reasonable accommodation. *See Barnett v. U.S. Air, Inc.*, 157 F.3d 744, 752-53 (9th Cir. 1998), *vacated on other grounds*, 535 U.S. 391 (2002), *remanded to* 297 F.3d 1106 (9th Cir. 2002). Furthermore, because as the court concluded above, Ms. Demorest has failed to establish that she was a qualified individual with a disability, the Defendants cannot be liable for a failure to engage in an interactive process. *See Humphrey v. Memorial Hosp. Ass'n*, 239 F.3d 1128, 1137-38 (9th Cir. 2001) (explaining that an employer's duty to engage in an interactive process is triggered by an accommodation request from a qualified individual with a disability).

**D.   Plaintiff's Retaliation Claim Fails Because She Has Failed to Present Any Evidence Related to At Least One of the Essential Elements of the Claim.**

The Defendants' cross-motion requests summary judgment against Ms. Demorest's retaliation claim, arguing that Ms. Demorest has failed to present any evidence on an essential element of retaliation: a causal link between involvement in a protected activity and an adverse employment action. *See Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (setting forth the elements of retaliation).

Ms. Demorest does not mention her retaliation claim in either her motion for summary judgment, or her Opposition/Reply brief. Thus, because there is no evidence before the court establishing that Ms. Demorest's termination was causally linked to her involvement in protected activity, the retaliation claim must fail.

ORDER - 11

## IV. CONCLUSION

For the reasons explained above, the court DENIES Plaintiff's motion (Dkt. # 9) and GRANTS Defendants' motion (Dkt. # 11).

DATED this 11th day of August, 2010.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 12